The next case today is Michael J. Moore et al. v. Electric Boat Corporation, Appeal Number 21-1566. Attorney Hellman, please introduce yourself on the record to proceed with your argument. Thank you, Your Honor, and may it please the Court, I'm Matthew Hellman from Jenner & Block on behalf of Appellant Electric Boat, and I'd like to reserve two minutes for rebuttal. You may have it. Thank you. In order to ensure that those who do work for the federal government have access to a federal forum to defend themselves, Congress allowed removal in Section 1442 of any claim, quote, related to that contracting work. So the question here is simply whether plaintiff's claims have some connection to electric boats' work for the government, and the answer is indisputably yes under both the plain text of the statute and an unbroken line of appellate authority considering similar claims. Specifically, all the plaintiff's claims relate to allegations about asbestos that the government required electric boat to use. To take just one example, and any example here is independently sufficient by itself to justify removal, plaintiff alleges that his ventilation equipment was inadequate to protect him from the asbestos that the government required electric boat to install. A claim that there was inadequate ventilation of asbestos electric boat was required to use is obviously and directly related to electric boats' use of that asbestos on the government's behalf. Another example, plaintiff claims that he was not adequately warned about the dangers of the asbestos electric boat was required to install. Again, that claim obviously relates to the asbestos the government required electric boat to employ. This case is that simple, and the courts of appeal have consistently held that cases like this involving identical kinds of claims are removable just for that reason. The district court reached the contrary conclusion only by ignoring the relating to language in the statute and the relevant case law. I'd like to focus on three points in my time this morning. First, the district court's misapprehension of the governing related to standard and what that standard encompasses. Second, I'd like to explain my plaintiff's both those that the district court focused on and those that it did not easily satisfy that standard. Third, and finally, and this part really isn't disputed here, I'd like to say a few words why electric boat satisfies the other requirements for removal. Let me begin with the relating to standard. The district court really decided this case almost as if it were in a time capsule that predated the current version of the statute. As we discussed in the briefs, the statute was amended in 2011 to provide a broader, a really still broader basis for removal. Instead of allowing removal for a contractor's actions taken on behalf of the government, it allowed removal of any claim relating to those actions. Relation to is a broad concept. As this court has observed in other contexts, it simply means having some association with or connection to. Importantly for this case, it does not require that the relationship be a causal one. Again, the question before the court here is simply whether plaintiff's claims have some connection to the work electric boat was undertaking for the federal government. Of course, they do. This court really doesn't need to go any further than the reasoning that the Fifth Circuit employed in the Latiolus case, which involved an identical failure to warn and contractor negligently failed to warn him about dangers of asbestos installed on a Navy ship during the contractor's refurbishment of the vessel. The en banc court held that that injury satisfied the relation to test. The Navy required the contractor to perform the refurbishment, required the use of asbestos. Therefore, the claims related to that work. It's the same with the Fourth Circuit's decision in the Sawyer case. Plaintiff worked in a contractor's boiler shop at the shipyard and alleged a failure to warn and a failure to dangerous of asbestos. Again, the court held that the relation to standard was satisfied because it was the government that required the use of asbestos and the claims related to that use. A key element of the district court's reasoning was its contention that there is some importance to whether or not the claims are focused on the premises as opposed to the ship itself. I think it might be helpful just to say a few words about that. That is a false distinction in this case. There's no dispute that the premises here were 100 percent, however you want to define premises, which is left a little unclear, but whatever the premises were, they were 100 percent focused on doing work for the government. The Groton shipyard that a luxury If the plaintiff is contending that while at the premises, it was injured due to inadequate ventilation or a failure to warn about asbestos, the only reason any asbestos would have been there was because the government required the use of asbestos in the construction or installation of the ship. Premises versus ship is not a meaningful distinction. The Sawyer case stands just for that proposition because there the claim was that there was a failure to warn not on the U.S.S. Rappahannock itself, but in the boiler room where the worker was working. And again, the court said quite straightforwardly, if there was asbestos about which there was a failure to warn, the asbestos was directed by the use of the federal government. Therefore, the relation to standard is satisfied. Could you hone in on what I understand to be, you've talked about the premises point and the causation point, but I also gleaned from Plaintiff's brief an argument along the lines of this is at least one of the key claims that he would hold on to is a claim that trains on the lack of a warning and whether to give that warning was entirely of no interest to the Navy. It left it to Electric Boat to decide. It didn't prevent Electric Boat from giving the allegedly omitted warning. So therefore, this wasn't acting under or at the behest of the federal government. It was just a decision Electric Boat had to make. That's how I understand the argument. Yeah, I think that is a fair characterization of the argument and the reason why it's asking the wrong question with respect to relation to the question. If there's a question about the adequacy of warnings that Electric Boat gave regarding asbestos, the government required Electric Boat to use, that is a claim that relates to Electric Boat's use of the asbestos. And so asking whether or not the government caused Electric Boat not to give that warning is not the right. That's the causal requirement that the Fifth Circuit, the Fourth Circuit and the plain language of the case. And again, that was exactly the argument that was made in the Fourth Circuit case and exactly the argument that was made in the Fifth Circuit case that the claim somehow doesn't relate to because there's an allegation that a different warning could have been given. That is not the right framework. The question at this point is just, does it relate to the work that Electric Boat was doing? Now, let me say a word because I think your Honor's question points to it. There is the requirement, of course, that there be a colorable federal defense here, a non-frivolous federal defense. That's a different and separate element of the inquiry. Plaintiff, quite rightly, hasn't attempted to argue that Electric Boat doesn't clear that requirement. And when you're looking at what one or a couple of the federal defenses in this case involve Electric Boat carrying out the orders of the government, that's the Boyle defense. It's also the Earsley defense. We talk about this in the briefing. And again, both the Fourth Circuit and Fifth Circuit cases are quite clear on this. Five minutes remaining. Thank you. As here, the government has chosen to give some warnings and has been involved in the warning and safety scheme. And there's robust evidence in the record to show that. We talk about it quite a bit in our briefing. Where the government has been involved there, there is, at minimum, a colorable federal defense that the warning scheme and safety scheme employed was directed by the government. And here, it was, with respect, is more than colorable. But at this stage, all this court needs to do is find that it's non-frivolous. And just in Latiolus and just in Sawyer, the same types of arguments were made. Sawyer, in particular, talks about how the plaintiff in that case argued that more warnings could have been given or should have been given. And it rejected that as a basis for depriving a contractor of a federal forum on the textually demanded grounds and government contractor defense grounds that where the government is involved in the safety regime, designing the same, what type of safety measures do we want? At that point, there's certainly a colorful defense that the safety regime here was the product of the government's work and Electric Boat was carrying it out. So again, I think all of this comes with the rubric of the district court and really the plaintiff in this case asking the wrong question under the case law. The question really that's before this court is, do the claims relate to Electric Boat's work? Yes, they do. And this, again, there's really been no dispute at this point in the case. Is there some non-frivolous federal defense that Electric Boat would have if the case goes forward in federal court? And yes. Is this defense with respect to the absence of an additional warning? Is the defense that the government made us do it? Has the government kept us from giving that added warning? The contractor has the defense. And again, this is the merits of that defense, not just whether it's non-frivolous. But to take it out a few more steps, the merits of that defense are that where the government was involved in designing the safety protocols and specified the safety protocols it wanted, the contractor who carries out those safety protocols gets the benefit of the defense. The question is not whether an additional warning could have been given. The question is whether or not the contractor did what the government told it to do after the merits of the contractor defense, as well as both under Boyle and under Yearsley. Those are two flavors of the defense. Suppose the government said, do at least A, B, and C. Whether you want to do D and E is entirely up to you. Would that be? How would that? And perhaps that's not what we have here. That isn't what we have here. And the very question is merits-based and not just a non-frivolous assertion of the defense. So we're getting a little bit ahead of where the case is. Frivolousness is an age of low merits. So I'm not sure I'd buy that distinction, but go ahead. Well, the first thing I'd want to say is this is not a case where the government said, we want warnings 1, 2, and 3, but knock yourself out if you want to give 4, 5, and 6. Any warning had to be approved by the government here. And there's also a lot of record evidence that suggests that the government made a considered decision about the extent to which it wanted to use warnings to provide safety versus other mechanisms for providing safety. And all of that would be developed and argued on the merits of the contractor defense. But at this stage, and I take your point, of course, frivolousness is a degree of meritoriousness, a very low degree. But at this stage, what the Fifth Circuit and the Fourth Circuit said with respect to identical record evidence about the warnings that the government gave and wanted to give, they said it was more than enough of a hurdle. And the Fourth Circuit in particular talks about this in some detail, saying it is not both for the ultimate merits and for the preliminary non-frivolousness inquiry that engages here. It is not a good argument to say, well, you can do more. Therefore, you don't have a federal defense. Where there's credible evidence that the government has been involved in designing the safety regime, that's all that's required. And then on the merits, you would show that that actually was the case and that safety regime. Counsel, let me ask you one last question. There's a recent case almost a year ago from this court, the state of Rhode Island versus Shell Oil Products, deciding from other circuits. But in that case, this court interpreted this same provision, and the case was remanded. It was affirmed on appeal. So I'd like you to see how you can distinguish that scenario from your particular removal. Absolutely. The Shell Oil case is different, and in fact, almost reserved the very question that this case presents. There, the defendants in that case argued, who were being sued for climate change and other environmental issues, argued that they ought to get the defense because they had government contracts. But those government contracts were unrelated to the claims in the case. There was no nexus. And the court didn't say causal relationship. It just said nexus, which is another way of saying some relationship. And the court expressly noted that although there were, some of those contracts involved work performed on naval bases, the allegations of wrongdoing did not, were not related to the time. You may finish. Go ahead. The key distinction there is that the court recognized, at least implicitly, that if we were talking about harm arising from work on naval bases, it might have been a different case. And of course, here, this is, that's exactly what we have here. So we've asked the court to reverse, and I will thank you for your time. Thank you. Okay. There appear to be no further questions. Thank you. You have some time reserved. Okay. Thank you. Attorney Hellman, please go ahead and thank you. And Attorney Gorwitz, introduce yourself on the record to begin. Good morning, your honors. Opposing counsel. May it please the court. My name is Michael and Rose Moore, and I'll give you my main points here at the front, but then I'm going to go straight into something that opposing counsel said, because I think he hit the nail right on the head there that I would like to draw your attention to. So what I'd like to use my time as available to talk about is first, what is not contested in this matter. Second, what claim is asserted against Electric Boat and how that claim distinguishes this matter from some of the case law discussed by opposing counsel. And then my third point would be the evidence relied on by Electric Boat in support of remand here, since they bear the burden. And then I'll just conclude. But before I go into those points, and Judge Chiara, your honor, you asked about this point as well. So opposing counsel said, he called this a false distinction, the distinction between the That is the key distinction in the case. It is not a false distinction and is the most important distinction in this case. We are not talking about a product. We are not talking about a warning on a product that was or was not supplied and was or was not mandated by the Navy. We're talking about a private contractor, not a Navy shipyard. Throughout their briefing and argument, the opposing side often tries to conflate that distinction. Now, I would say that is the of because they do work for the government, they are somehow exactly the same as the government, but they're not. They're not a public, you know, naval base. They are a private contractor. Yes, Judge. Isn't their argument a little bit more pointed than that? Isn't their argument that, well, let's say this. If the Navy had never requested that there be any asbestos or products with asbestos on the site, then presumably no warning at all would have been needed. And the only reason you say some warning was needed was because there was asbestos on the site. And yet the presence of asbestos on the site would appear to be at the behest and requirements of the Navy. So, hence, the warning is related to what the Navy is requiring. I think that's the argument you need to sort of hone in on. Yes, Your Honor. Your point is a fair one. This is, you don't need to know this, but I often tend to make straw men sometimes and I'm really trying to avoid that. So, I do not want to reduce this to a straw man argument that, you know, the presence of the asbestos is somehow forbidden. Counsel, it's pretty clear that the district court just used the wrong standard. It ignored the relatedness of the amendment to the statute that found that there was some sort of causal requirement going well beyond even First Circuit law prior to the amendment. So, in addition to Judge Kayada's question, you have a separate burden, which is, all right, normally when the district court uses what is obviously the wrong standard, that is a sufficient basis for a reversal right there. And let's, though, assume hypothetically that we would look at this de novo as to whether the relatedness standard, which is not a causal standard, is met. So, what is your argument that there is no relatedness here? Thank you, Your Honor. And Judge Kayada, I don't want to put you on the back burner, but I think I can address these two questions in tandem. They are related. Yes. Related is the key word here. So, I don't know if Your Honor is making a joke or not. But so, I will do my best to answer both questions at the same time. And Judge Kayada, if you feel I've not gotten back to your question, please just jump in there, though. But in answering Judge Lynch's question, I think the standard of review is the key issue here. And we have two standards of review. So, the legal determination, and this is my kind of what's not contested category here. I don't think there's any arguments on the other side here that both sides cite Romulus v. CVS, First Circuit, that the jurisdictional determination is de novo. So, you take a de novo look at what the District Court did here on their ultimate decision of whether or not federal jurisdiction under federal officer removal applies and whether or not the remand decision was correct. That's reviewed de novo. What isn't reviewed de novo is the District Court's factual findings. And that is where I think the real meat of this argument and case lies. Okay. Would you get to your point, please? Apologies. I tend to speak in circles a little bit. So, the District Court found there was no connection between the premise's liability claims and the activities under the color of federal office. And I believe opposing counsel has two minutes, and they will surely correct me if I'm wrong here. But I don't think they would disagree that a finding of no connection satisfies the correct legal standard under Latty-O-Lay, under Sawyer. How can you say there is no connection when, in fact, the issue is not connection? It is related, and it is the Navy which required the use of this asbestos in the construction of the submarine. Your client was in the Navy at the time. He was assigned by the Navy to assist in that construction. And his very claim depends upon his exposure to the asbestos, which the Navy required the shipyard to use. Yes. And this returns us to Judge Chiara's original question. And so, the reason why I can that there is no connection, this all ties back into this, what I would call the key distinction, opposing counsel called the false distinction of the shipyard from the ship. There's no dispute that there was asbestos at the shipyard because of the Navy, that the ship was there because of the Navy. But what is in dispute is, has opposing counsel, who has the burden before the District Court, did they establish any connection between the shipyard's ability to warn, which is the only claim pled against Electric Boat, their common law duty as a private employer, to warn of this? I would feel much better if you would use the statutory language about relatedness. All right. So, how is your failure to warn somewhere on the premises about the dangers of asbestos, not related to the Navy requiring that asbestos be on the premises and be used during the construction? Yes. And I will stick to the statutory language related to. And so, I'm just going to stop there. I plan on my notes here. So, this is from the District Court's order. And the District Court looked at, so we have the two affidavits. We have the affidavit of Heil and the affidavit of Heil. And that is the evidence relied upon to establish the relation between the premises liability claim and the failure to warn. And what the District Court said is, and they in-depth reviewed the evidence, this is the same evidence relied here on appeal. The District Court said, the problem is, and I'm quoting from Addendum 10 here, the problem is that Electric Boat's materials, substantive and comprehensive as they are, fail to address the premises theory of liability. And that is how in good faith... But that's simply not true. Well, that is where I get into the standard of review respectfully, Your Honor, is that that's a factual finding of the District Court. No, it's not. It's the District Court's conclusion as to the evidence permitted, submitted to it, as to whether it met the small burden that the shipyard has here. That is a legal conclusion. Okay. And even if we call that a legal conclusion, which, you know, I won't take any issue with that, that they still have to meet that burden. They still have to point to the evidence that negates this finding by the District Court that Your Honors can find on the de novo review that they did meet their burden, they did establish relation to. And if we look at those affidavits, I'll just skip away from the District Court order to say, okay, for arguendo, let's say that you do not find that holding convincing, looking at the affidavits themselves, there's the Heil affidavit and there's the Paget affidavit. And what the District Court is saying is that they speak to products. They do not speak to the shipyard and they do not establish any relation between them. And I think the Sawyer case, just to jump in. That would make sense if your fellow, you know, tripped on something left in the shipyard, I suppose. But you have a failure to warn case, right? Failure to warn of a danger. One element of that case is establishing there was a danger. What was the danger here and how did it come to be there? The danger was asbestos that came to be there at the requirements of the Navy. And how do you say that your claim is not related to requirements of the Navy that there'd be asbestos there? It is a very fair question. And the way that I would attempt to make that, it's a fine distinction, but I don't think we're counting the angels on the head of a pin. I think there is an actual material difference here. Not that materiality is a standard, but so Sawyer was a products liability failure to warn case, whereas we are talking about a premises liability failure to warn case. Those are both. You keep using the word premises like it's a magic talisman, all of the abracadabra claim. All right. The abracadabra claim depends on there being asbestos. Yeah. Yes. And but the four minutes remaining, four minutes. Sorry. I'm just trying to organize my words to just one second. So I don't want to repeat the word premises ad nauseam at you there. The distinction that I would make between those two though is who controls the warning and is it under color of federal office? Does it relate to the activities under federal office? So in Sawyer, while yes, there is to some degree a premises liability aspect to it because they're talking about who controlled the warnings in the boiler room, what was sued upon were the boilers themselves, the asbestos in the boilers, which was put there by Foster Wheeler. And the claim was, could Foster Wheeler have provided a warning to the plaintiff? But there, all of the evidence, which was supplied was Foster Wheeler had no control over the warnings which were supplied because they were all dictated by the Navy. Whereas here we have evidence that the Navy dictated warnings. I understand what you're saying now. How do you respond to the point made by your opposing counsel that the Navy reviewed and approved the warnings? And so that is where I would draw your honor's attention to the Highland Paget affidavits. They talk a lot about what the Navy controlled about the submarines, about the products that went into the submarines. And this is where the district courts, what I would call a finding, but what Judge Lynch calls a conclusion, I'm fine with either distinction is, is that nowhere in those affidavits, which was the burden of the parties seeking removal to federal court, speak to the Navy's control of warnings at the premises. The Heil affidavit makes no reference of premise. And I don't want to not give counsel, you know, I'm, I'm a little confused. He actually worked as a member of the U.S. Navy inside the submarine, one assumes, or if not inside the submarine, outside the submarine on those components of the submarine, which the Navy required asbestos to be used. Okay. Therefore, if there was any, you're certainly not asserting that your cause of action is because of exposure to asbestos a mile away on the shipyard or from the actual construction work he was engaged in. So either under the theory that his cause of action arises because of the exposure, which he surely underwent in the submarine or in those portions of the manufacturing facility, which involved the building of the components using that, that he picked up asbestos somewhere unrelated to those activities at the far theory. But that isn't what your cause of action is. And if I gave that impression, your honor, then I apologize. That's not, I'm not trying to say that the asbestos was not there because of the Navy and that Mr. Moore was not there because of the Navy. What we, you know, as you said, to return to the statutory language, the four relating to is an act under color of government authority. So I don't have the exact language. I have it over here. But and what I'm saying is the asbestos was certainly there under a color of federal authority, but the operation of the shipyard, which could or could not give a warning that had no relation to its obligations to the Navy as a private employer. And I'll just briefly read the premises claim as defined by the district court. I think this will help. Well, there's a hidden danger in the premises where work is to be done by an independent contractor of which the owner occupant has knowledge or by use of due care would have knowledge and of which the servants of the contractor have no knowledge. The owner occupier is under a duty to the servants of the contractor to warn them of the hidden danger in the premises. And that's the next time. Finish your sentence, please. It's just, that's what distinguishes this from Sawyer where the product was the issue. The late to say Electric Boat could or could not have provided the warning under that to the invitee, which was not related. Thank you, Your Honor. I see my colleagues have no questions. Thank you. Thank you, Attorney Gorwitz. Please mute your audio and video at this time. Attorney Hellman, please reintroduce yourself on the record. You have a two minute rebuttal. Thank you, Your Honor. Matthew Hellman again for the appellant. I'll be very brief in rebuttal. I think there's been some confusion and mixing of the concepts here with my friend's argument. The primary question before this court is, are the claims related to asbestos that the Navy required Electric Boat to use? They are. Because as Judge Kayada said, if there was a failure to warn, it would only be actionable because there's asbestos there. Why is that asbestos there? Because the government required it to be used. That is the beginning and the end of the, or a sufficient end of the relation to inquiry. There is the additional question of a colorable federal defense. I just want to say a few words about that. Number one, again, we're not, as the law says, we're not is it non-frivolous? There is ample record evidence that the district court either did not look at or misapplied because the district court was using the wrong standard to show that there's a colorable claim that the government spoke about and was involved in setting safety standards. Again, I would point the court to JA69 where the testimony is the Navy sets safety standards to be met on its ships and in its shipyards. There is more than a non-frivolous, a highly colorable claim that the safety inquiry here was something that the government was involved in and specified what it wanted. That is the beginning and the end of the colorable federal defense inquiry as well. Just to step back to first principles, the whole purpose of this removal provision is to allow the entities that do work on behalf of the government, whether federal officers or those who contract with them, to have the benefit of a federal forum to hear the validity of that federal defense. That's all we're asking for in this case and that's all that is required. That's time required. So we'd ask for a reversal. Thank you. Okay. Okay. Seeing no questions. Thank you very much. Thank you. Your honors. That concludes argument in this case. Attorney Hellman and attorney Gorwich should disconnect from the hearing at this time.